### SLAUGHTER et al. v. BOYCE et al.
#### (No. 593.)

(Court of Civil Appeals of Texas. Amarillo.
Oct. 17, 1914. Rehearing Denied
Nov. 7, 1914.)

1. ESTOPPEL (§ 78*) — DEED OF TRUST — RELEASE.

Where a bank controlled by claimants, desiring to transfer a note secured by a deed of trust, executed a release of the deed and an assignment of the note without recourse, but, because of doubt as to the validity of the deed, claimants were required to guarantee payment of the note, which they did, and thereafter were released to the extent of $1,200 on the assignee taking a new note from the original debtor and a new deed of trust, claimants, having subsequently been compelled to pay the balance of the debt unreleased, were estopped to claim, as against the assignee, that their claim against the debtor for the amount so paid was secured by a first lien on the security.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 204–210; Dec. Dig. § 78.*]

2. SUBROGATION (§ 7*)—RIGHT TO SUBROGATION—SURETIES.

Where a surety for a part of a debt secured by a deed of trust was compelled to pay such part, he was only entitled to share in the security through the doctrine of subrogation, which conferred no rights on such surety until the demand of the creditor was fully paid.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 58, 77, 83, 92; Dec. Dig. § 7.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

*Appeal from District Court, Dallam County; D. B. Hill, Judge.*

Action between W. B. Slaughter and others and A. G. Boyce and others. From a judgment in favor of the latter, the former appeal. Affirmed.

*Veale & Davidson*, of Amarillo, for appellants. *Del W. Harrington*, of Amarillo, and *R. E. Stalcup*, of Dalhart, for appellees.

HUFF, C. J. This cause originated in the probate court of Dallam county, from which it was appealed to the district court of that county, and from that court to this. The issues involved relate to the classification of certain claims and the dignity of the liens held by the respective parties. The issues will be sufficiently presented by the facts: "On the 20th day of November, 1906, appellants Slaughter, Clawson, and Imes loaned to C. D. Stepp and wife, Gertrude Stepp, the sum of $1,610, taking from them their note as an evidence of said indebtedness, due one year after date; also as security for same a deed of trust on the property involved in this suit, with other real estate. J. S. Bailey was named as trustee in the deed of trust, who also, as notary public, took the acknowledgment of Stepp and wife. This note had not been paid by the Stepps up to June, 1908. During this period of time appellant Slaughter was president of the First National Bank of Dalhart, Tex.; Ralph L. Moore was its cashier. About June, 1908, C. D. Stepp began negotiations with Col. A. G. Boyce, through his agent, J. H. Boyce, for the purpose of having Col. Boyce take over and carry the indebtedness. With a view to this end, Slaughter, Clawson, and Imes indorsed said note without recourse, and gave same to Ralph Moore to be delivered to Boyce, upon the payment into the First National Bank of the amount of said Stepp's note, with accrued interest; also Slaughter, Clawson, and Imes executed their release of said deed of trust which was also delivered to Ralph Moore, with instructions to deliver same upon the payment of the amount of said Stepp note and accrued interest. Upon being advised by his attorney that said deed of trust was probably invalid, because the trustee named in same was also the notary who took the acknowledgment of Stepp and wife, J. H. Boyce refused to take over the note, unless Slaughter, Clawson, and Imes would indorse same in blank and guarantee its payment. Accordingly the 'without recourse,' indorsement was marked out, and Slaughter, Clawson, and Imes indorsed the note in blank and guaranteed its payment. The amount of the note was then paid to Ralph Moore, as the agent of Slaughter, Clawson, and Imes, and the note so indorsed was delivered to J. H. Boyce. In accordance with the instructions of Slaughter, the release of the deed of trust was also delivered by Ralph Moore. During the consummation of this transaction all of the parties concerned, including Slaughter, Clawson, and Imes, extended the note until November 30, 1908. On the date that this extension expired, November 30, 1908, Stepp and wife made a new note to A. G. Boyce, for the full amount of the original indebtedness, including accrued interest to that date, and gave a new deed of trust on the property involved with other property; Boyce, however, holding Slaughter, Clawson, and Imes by reason of their guaranty on the old note. On December 16, 1908, having taken a new deed of trust from Stepp and wife, A. G. Boyce, through his agent, released Slaughter, Clawson, and Imes to the extent of $1,200, by reason of their indorsement on the old Stepp note, this release being made by agreement between Judge Veale, attorney for Slaughter, Clawson, and Imes, and J. H. Boyce, acting for A. G. Boyce; and at this time all parties concerned agreed to extend the time until the 1st of March, 1909, at which time Slaughter, Clawson, and Imes were to pay Boyce, under their guaranty, the difference between the original Stepp indebtedness and the $1,200 for which they had been so released. This agreement for extension was made for the purpose of giving Stepp an opportunity to procure additional or collateral security for his entire indebtedness, in the event of which Boyce was to release entirely Slaughter, Clawson, and Imes from their guaranty on the original Stepp note; but, should Stepp fail in this, then on the 1st day of March, 1909, Slaughter, Clawson, and Imes were to pay Boyce the entire Stepp indebtedness, less the $1,200 for which they had been so released, which sum amounted on March 1, 1909, to $594.45. On March 3, 1909, Stepp having failed to secure additional security for his indebtedness, Boyce demanded, and was paid by Slaughter, Clawson, and Imes, the $594.45, and said amount was then credited by Boyce on the new Stepp note held by him, thereby reducing the indebtedness of Stepp and wife to Boyce to the sum of $1,200. Stepp having died, and administration being had on his estate, Boyce filed his claim of $1,200, and accrued interest, with the administrator, and asked that it be allowed as a claim against the estate of Stepp, and that a first lien be declared on the property involved as security, which accordingly was done by the probate court. Slaughter, Clawson, and Imes also filed in the probate court their claim for the amount which they had paid Boyce under their guaranty, with interest, and claimed a superior lien to that of Boyce on the property involved as security. The probate court allowed this claim and classified same, but denied to Slaughter, Clawson, and Imes their claim of a lien on the property involved as security for its payment. This suit was brought, and is being prosecuted, to determine the superiority of the lien held by Boyce and that claimed by appellants. The trial court having held that Boyce's lien was superior to appellants', this appeal has been prosecuted to review that judgment."

This is the statement taken from appellees' brief, which we find to be substantially correct.

[1] The trial court finds that appellants executed a release to the lien on the lots to secure the note of $1,610. The facts are sufficient to sustain the finding. Slaughter testified that he left the release with Moore—"to be delivered when the money was paid, and when the money was paid he had a right to deliver the release, when he received the money or received a check for the money and the money was then passed to us. I left it there for the purpose of being properly delivered when released. He had a right to deliver the release in case the money was paid—he or Mr. Haynes; I think it was Moore."

There is no question made but the release was signed and acknowledged and left with Moore to deliver when the money was paid. Stepp made arrangements with Boyce to get the money, which was paid by a check of $1,703, drawn by Boyce and payable to appellants, and the testimony shows that the bank passed it to the credit of the appellants. The condition which appellants annexed to the delivery of the release was complied with. Subsequently, by agreement of all parties, a new deed of trust was ex-

ecuted on the property to secure the entire indebtedness. By this agreement appellants were released on their guaranty for the sum of $1,200 of the indebtedness, and were held liable for the balance of the indebtedness, which amounted, principal and interest, to $595. We think under this last agreement and arrangement it would be inequitable to postpone appellees, and revive a release mortgage for appellants' benefit, which, in fact, would release them entirely from their guaranty and result in Boyce looking alone to the deed of trust for the payment of the entire indebtedness. This was not the agreement and the understanding by the parties at the time of entering the $1,200 credit. We believe it would be grossly inequitable to allow such a result, and we think, under the facts of this case, that appellants by the release, contract, and deeds are estopped from now saying their claim is secured by a first lien.

[2] The solution of this case, however, does not rest alone upon estoppel. The note was executed by Stepp and wife to appellants. The appellants indorsed it to Boyce and guaranteed its payment. When they did so they transferred, not only the debt, but the lien. They have therefore no right to participate in the proceeds of the lien until the debt which was given to secure is paid. If appellants' contention is correct, that the release was not delivered, then the lien existed to satisfy the debt in full transferred to Boyce. When the debt was renewed by the new note and deed of trust executed on the property to secure it, it had the effect to renew the debt and the lien to secure the debt. The fact that the old note was credited with $1,200 by the new note and holding the guarantors only for the balance did not thereby create two debts, but was the method adopted to evidence appellants' guaranty and the amount for which they obligated themselves to pay. The notes and deeds of trust evidence the same indebtedness and lien. Changing the form of the obligation did not change the debt or release the lien securing it. If appellants desire their claim paid out of the proceeds of the property under foreclosure, they should first pay the entire indebtedness due Boyce, which the lien secured.

The appellants, in other words, are entitled to be subrogated to Boyce's lien when the debt due Boyce is paid, and not before. Neither of the deeds of trust secured appellants except through the doctrine of subrogation. They transferred the lien with the note to Boyce, whose debt was secured thereby.

"Even if a surety is liable only for a part of the debt and pays that part for which he is liable, he cannot be subrogated to the securities held by the creditor until the whole demand of the creditor is satisfied." Sheld. Sub. § 127.

Until Boyce had been fully satisfied the appellants cannot enforce subrogation.

"When his debt has been only partially paid, it would be unreasonable to hold that the third party who made such payment thereby acquired a precedence over him, or was even placed upon an equal footing, in reference to the security for the payment of the remainder of his debt. No claim by subrogation, whether conditional or by operation of law, to the securities held or the remedies enjoyed by a creditor for the collection of his demand, can be enforced until the whole demand of the creditor has been satisfied." Cason v. Westfall, 83 Tex. 26, 18. S. W. 668; Darrow v. Summerhill, 24 Tex. Civ. App. 208, 58 S. W. 158, on page 164; Goddard v. Peeples, 11 Tex. Civ. App. 615, 33 S. W. 314.

See note to American Bonding Co. v. National, etc., Bank, 99 Am. St. Rep. 482, 483.

We think the trial court correctly held that the appellees should first be paid out of the proceeds obtained under foreclosure, and that appellants' claim be postponed until appellees are fully satisfied.

The judgment is affirmed.